Step 1. Step 2.     Step 7. Step 8. Step 9. Step 10. Step 11. Step 12. Step 13. Step 14. Step 15. Step 16. Step 17. Step 18. But in its decision in trying to accomplish this, it has simply ignored the legislative history, the clear congressional intent of the statutes which form the very basis for the assessment, which is 19 U.S.C. Section 1592. In the previous appeal in this matter, you probably remember, I believe it was this same panel that heard that appeal, you found that the judge had made an award of a penalty in the full amount of the requested by the government. And then under a misinterpretation, Section 1505C held that through the somehow magic reliquidation of these long-liquidated entries that he could assess compensatory interest. So now we're here, and we all know what the court did. Now we're reviewing for an abuse of discretion, right? Yes, ma'am. How did the district court abuse its discretion in its application of the complex machine works as what the test, the 14-part test, is what governed here? Where is the abuse of discretion? In its initial opinion subsequent to trial, the trial court did a reasonably thorough complex machine works factors analysis. It didn't look at all the factors, but it did look at quite a few of them, and, in fact, found factual basis that the company in good faith. Did you say that when they did it initially? When the judge did it. No, I want to talk about what he did here in the case before us that's on appeal. What he did here is, upon re-analyzing the amount of the penalty to be appropriate, given the fact he could not award compensatory interest, he said that because he couldn't award the interest that the one complex machine works factor, the compensation, the need for compensation to the government, overrode exclusively all the other factors. And based solely on that criterion, he assessed the full monetary penalty. What he should have done, I believe. Well, it seems to me, tell me if you don't think this is a fair reading, that the judge did consider other factors, and that deterrence was not completely absent from his analysis. One of the problems I'm having, I'll tell you, maybe you can clear it up. It seems to me, compensation and deterrence, it's not intuitively obvious to me that they're completely separate. They are under the statutory scheme enacted by Congress, Your Honor. The penalty statute, Section 5092A, provides penalties for various infractions. The compensatory portion of Section 1592 is Section 1592D, which this court has ruled is a mandatory provision, which requires the government be made whole for lost revenue. And the deterrence factor is, if we don't give the government that money, NSC will be rewarded unfairly for what it did. But they won't be rewarded, Your Honor, because, as I'll get to later in my argument, is at the time that the Section 1592 statute was revised in 1978, if the government liquidated an entry with increased duties, and six or eight or 10 or 12 years went by while that issue was litigated in the Customs Court, if an award was made to the government, ultimately no duties were owing, there was no provision to assess interest on duty assessments prior to 1984. And when the law was changed in 78 under 1592, Congress specifically said, we want this D provision in there because we want to be able to collect those duties. So your point is that there's absolutely no deterrence factor here in this case. There is. And if you look to the trial court judge's first opinion subsequent to trial, he said, this company has gone overboard to do the right thing. The issue before the court is the appraisement of merchandise, which is an inherently complex, difficult, almost understandable scheme. And they've tried to do their best, but have made some errors over the time. And he said, I believe it's a quote from the court, I don't see where the assessment of a penalty in this case is going to have any deterrent effect, because none is needed. These people are trying to do the right thing. It's hard for me, you keep going back to the first issue, and it's the first case. And it's difficult to me to evaluate what the judge said, because at the time, as we all know, the judge also awarded the $250,000, whatever it was, under the other category, which we ultimately reversed him on. So it's hard to evaluate what he was talking about in terms of compensation and deterrence, since he knew that other pot of money was going to the government in any event, right? Am I right about that? You are, but if you look at the first decision, he did a thorough analysis of, as required by this court, under the complex machine works, he did a fairly thorough analysis and said, there's no need for much deterrence here. A penalty of $10,000 is appropriate, given all the facts and circumstances. Including that he was awarding $250,000 to the government under an erroneous but different category. What we're arguing is that, now that he can't do that, why does he suddenly need to assess a $258,000 penalty as a deterrent to a company he's already said that a $10,000 penalty would  The Congress made it clear that assessment of penalties under Section 1592D, it's not compensatory. It's not intended to make the government whole. It's not intended to serve as any recompense. It's to serve as a deterrent for future misconduct. And he found that this company has an incredibly active, proactive compliance program, which it still does. And that program is run by the lady sitting in the audience that works for National. And now for him to suddenly decide, well, maybe that wasn't correct, because sour grapes, I can't assess the interest, so I'm going to get the full penalty. It contravenes congressional attendance to the purpose of the penalty statute itself. Well, the Congress gave him the discretion to award any penalty after that maximum amount, right? It did, but this court has instructed the court on a couple of occasions. And on one occasion said, a penalty to be assessed if any, quote unquote, is within the sound discretion of the trial court. The other issue that this court has mandated to the CIT is you must do a determination based on a thorough analysis of the 14 factors to come up with an appropriate penalty amount. Can I move you on to the prejudgment interest issue? And that is, am I understanding correctly that at least two arguments are, one, that it's a punitive statute and therefore no prejudgment interest, and the other, that the amount was not ascertainable, and therefore they shouldn't have? In the statutory scheme under section 1592, there is an administrative process that's gone through. Any penalty determined by the government prior to the thing going to court is not binding on the court. As a matter of fact, it's not even admissible, I don't believe it, before the trial court. The trial court's job is to do a de novo review to see if any penalty is appropriate, and if so, how much of a penalty. And until the trial court enters judgment for a fixed sum of a penalty, which could be anywhere from zero to the maximum, there's nothing to which to assess prejudgment interest. Do you have any other? In your brief, as I recall, you cited one case, which is kind of a temporary emergency case, the Eastern Airlines case from 1983. Do you have any other cases to support your proposition with respect to the uncertainty of the amount with regard to prejudgment? I believe it was either AEI or SIPA in their amicus brief, I think, very thoroughly addressed that. I don't recall any citations off the top of my head, but I know it was one of those two briefs I know was extensively, almost exclusively, devoted to case law, supporting the notion that section 1592 indeed is a penalty. The other result I would suggest is a finding that prejudgment interest could be found to be owing on a prior disclosure penalty opens Pandora's box for, I believe, the assessment of prejudgment interest on any section 1592 penalty, which I believe is an absurd result and clearly contrary to Congressional intent. Do you want to reserve your rebuttal time, Mr. Whiteley? Yes, Your Honor, I will. Thank you. Thank you. Mr. Tussine? Good morning, Your Honor. May it please the court. A national semiconductor attempts to convince the court that Congress intended that violators be left in a better position than they would have been had they followed the law in the first instance. With respect to both issues, first with respect to the trial court's exercise of its discretion to award the maximum allowable penalty, and second with respect to prejudgment interest. Why would the government want to impose a maximum penalty on a voluntary disclosure? Because it seems that you're sending the message that there's absolutely no incentive in the future to voluntarily disclose. You're going to get the same penalty anyway. So don't disclose. Keep it quiet. Maybe you'll get past the statute of limitations. It doesn't matter. You're going to get the penalty anyway, whether you disclose or not. Well, two points. It doesn't sound like the government's thought that all the way through. Well, two points. First of all, 19 U.S.C. 1484 and 1485, Congress mandated that importers sign under oath affirming the correctness of all of their entry documents. Likewise, Congress mandated that when importers learn of an error on their entry documents that they promptly tell the government. Compliance with the law is a baseline expectation. It's not a heroic action here. And Congress, in imposing and having granted, and the enforcement for that is the penalty. And if you're going to get the maximum penalty either way, what's the incentive to be the good guy? Well, the maximum penalty is the amount of interest. The incentive to be the good guy is that customs will enforce. And as opposed to just paying interest, if customs discovers a violation and it's not disclosed, then the penalty will be up to two times lost revenue for negligence, or 20% of the dutable value of the goods, or all the way up to the value of the merchandise for fraud. So those penalties are much stronger and provide a much stronger, they provide a strong basis for importers to simply pay the interest on their lost revenue. In fact, at trial, we entered all of National Semiconductor's annual reports into evidence. And every year, they earned between $12 and $55 million of interest income. Why doesn't Mr. Whiteley have a point that we struck down the compensatory interest part of the earlier opinion, and rather transparently, it was all shifted into penalty this time around? Isn't that a little transparent, as he would perhaps say? We believe that the court's intent was clear on remand from this court, and that was that just like when the court erroneously applied section 1505 to make the government whole, it applied instead the complex machine factors under this court's direction that had the same effect, and this time followed the law correctly. In other words, the entire case, the entire judgment by the CIT is predicated on the compensatory factor, and nothing else? No, the Court of International Trade had also noted a lot of errors by National Semiconductor. For instance, the genesis of the claim was that the customs compliance head was ill for a number of years while these violations were being made, but at the same time, National Semiconductor had three employees whose full-time job was to collect refunds from customs on duty drawback, and none of those people were shifted into customs compliance duties to make sure that on the payment side of the shop, the law was complied with. The court, there was evidence that there was a fair amount of negligence in this case. Well, just responding to the concerns which I shared that Judge Rader raised with respect to the policy implications of the government's position, am I correct that the government would not necessarily, if the judge here had given them half of the amount rather than the entire amount, do you think the government would be here arguing that the court, the CIT, abused its discretion for not awarding the entire amount in these circumstances? I would be speculating on what the Solicitor General would do, but that sounds like a very unsuccessful appeal by the government, because we have consistently argued that the trial court has discretion to issue a penalty anywhere between zero and the maximum amount. We argued that in Ford. It would be pretty much of a stretch for us to argue that in this case. Looking at the prejudgment interest section, this is a penalty. There's no way to know it, what it's going to be, therefore no way to avoid it. Doesn't that suggest it's not subject to interest at all? Well, no, it's an equitable remedy, Your Honor. And is that the same as saying there's no legal basis for it? No, not at all. The prejudgment interest is under the trial court's equitable authority, 28 U.S.C. 1585, which the trial court possesses the same equitable authority as a district court. In this case, the trial court, correctly in our view, analogized the interest-only penalty under 1592C with liquidated damages, which is all that this really is. Plaintiffs are cited to nothing in the legislative history indicating that Congress intended the interest-only penalty to be a punishment. Just by happenstance, it's located in 1592C. Likewise, we cited to numerous cases noting that Section 1592 has both remedial and punitive aspects. Well, it's called a monetary penalty, correct? And the legislative history and everything else seems to show that, at least in part, it's aimed at deterrence. And you're telling us, I mean, the judge said here it's a compensatory form of liquidated damages. Is that, do you think that's an accurate characterization of this provision? We don't believe the judge held that it was a compensatory form of liquidated damages. We believe the trial court judge analogized the case to liquidated damages. And it is clearly compensatory. Well, I thought he said. I don't know whether he held that. But didn't he not say that the award here is a compensatory form of liquidated damages? I believe he analogized to liquidated damages and also was able to distinguish. Well, do you think that's right? Do you think that's correct?  Yes, I think it is. Because? Because the harm to the government was readily ascertainable from day one. Just because the government had not yet proved that harm doesn't mean that the harm was not readily ascertainable. The government hadn't proved it until the court issued its final judgment. Mr. Tosini, you argued a moment ago that this penalty is wholly within the discretion of the judge, right? Yes. And that whatever he would set it at would probably be appropriate. In that instance, you're also admitting that National Semiconductor had no way to know what he was going to award as the penalty. They couldn't avoid the penalty. How can they be liable for interest on something that is unavoidable? Well, the reason that. It is wholly to the discretion of a judge. You're supposed to somehow divine what it's going to be and make a deposit in advance. I'm confused. Well, because we cited to a number of cases that are a very similar situation, which were the SEC cases. We cited to eight cases where the SEC obtained before the district court in civil actions disgorgement of insider trading profits, which is also one of those things that's not readily ascertainable. And likewise, awarded prejudgment interest upon that amount to prevent the unjust enrichment of the violator. Well, that's exactly what's happening here. One analogy would be MasterCard. This is going to become interest on the interest that was awarded as a penalty. Remember, he awards this penalty as a compensation to make sure the government's made hold a form of interest. And now you're going to get interest on the interest. Yes, yes, we will. And in fact, it's like with MasterCard. If I were to charge $1,000, and I were to wait for five years, and then my bill with MasterCard has gone up to $2,000, I pay $1,000 and say, OK, we're even now. If the case were to then wind through litigation for another five years, and the bill has once again gone from that $1,000 up to $2,000, am I going to be liable only for $1,000 more,  or am I going to be liable only for $2,000? That's all that's happening here. And the trial court noted that it's a unique situation. It's a case of first impression that only involves interest under Section 1592C4. It's a very unique situation, because the interest only penalty, although it's a penalty by name, is on its face compensation. Otherwise, why would Congress impose punishment? Now, see, you seem to be arguing that the amount of this penalty really isn't in the discretion of the judge. It's whatever is necessary to compensate the government, and therefore is ascertainable and wholly subject to interest. But that's not what you argued before. No, it is, because the trial court is given the authority to look at a number of factors. And a core group of those factors are the factors that concern remediation, making sure that the government is made whole. And those are the main factors that the court relied upon here. But would Congress? By the way, on your MasterCard example, the thing that strikes me there is that MasterCard tells me in advance what the interest rate is and what I'm going to be paying on. The National Semiconductor has no way of knowing either in the situation that you're talking about. They don't know the amount that they're going to be subject to. That's the discretion of the judge. And they don't even know the interest rate. Well, for the interest rate, people do know that they will be subject to the Treasury rate, whatever it is. And that changes as time goes forward, just as the interest rate on our credit cards changes as time goes forward. Yes, with respect to the amount of penalty, the trial judge does have. See, on MasterCard, I know exactly what it is, because I know how much I've paid or haven't paid. And they send me a little notice every month. That's correct. But the notice, you don't know if six months down the road, MasterCard might raise your interest rate or lower your interest rate. Well, they have to give me notice, won't they? They do, just as the Treasury gives notice. No, there's no notice here until the judge in his or her discretion decides. Well, the party always has notice of the rate that's accruing. So what are they supposed to do? I mean, you acknowledge the standard is reasonably ascertainable. Should they assume from the get-go that it's going to be the maximum penalty in every single case? Is that the operational requirement here? Yes, we presented evidence that it's going to be. Did you say yes? Yes. Everyone should assume it's going to be the maximum, even though the trial court has a high level of discretion in terms of what amount he's going to award below that maximum. Yes. And it doesn't compel. The statute compels the maximum, I understand. I don't understand how you can say that it's reasonably ascertainable when that's simply a maximum within which the trial court has a tremendous amount of discretion. The statute doesn't compel the maximum. However, the important thing to keep in mind is if Congress really intended, if Congress really intended the prior disclosure provision to punish, to punish violators, why would it have imposed a ceiling on that amount that only puts the parties in some semblance of the same position they would have been had there been no violation? That fact, that fact alone, really makes it very clear that congressional intent was not to punish with the interest only penalty. It happens to be located in 1592C, which contains penalties. But if an importer discloses their negligence and gross negligence, all that happens is they're put in the same position they would have been had they never committed the violation. And then within that same section, there's a penalty. I don't understand. If you're saying that compensation is compelled, you recognize that Congress said this is a maximum within which, meaning that Congress clearly contemplated that trial courts could award less than that. Congress contemplated the trial courts can award less than that. But Congress also contemplated that the maximum would be the injury that was suffered by the government. And that was why Congress, not as clearly as we would hope, but intended to put the parties back in the same position they would have been had there been no violation. Well, if that were the case, then it would have compelled the maximum in every case, no? Well, Congress, in this statute, allowed customs and allowed the court to mitigate that amount. Doesn't that suggest that the mitigation should come upon voluntary compliance, as occurred in this case? Isn't there a pretty good correlation between the arguments Judge Prost is making and what happened here? No, Your Honor, because not only any reduction, either of prejudgment, interest, or of the penalty here, would put National Semiconductor in a better position than it would have been had it followed the law. It would put National Semiconductor in a better position than its competitors that followed the law from day one. And in fact, in this case, because there are gaps in the interest period. So are you making a deterrence argument here? Just saying that they wouldn't have any incentive not to commit to these violations so there'd be no deterrence? Well, with respect to deterrence, there's the remainder of Section 1592, which imposes much harsher penalties than the remediation contained in the interest-only penalty. Likewise, there's the possible criminal prosecution for intentional unlawful action. There are a number of other deterrent mechanisms. Just a quick scan at the complex machine factors identifies, to me, at least four that suggest that voluntary compliance should be taken into effect. The good faith effort of the defendant to comply, the degree of culpability, the history, the shocking the conscience of the court. There's a lot there that suggests, boy, when you have voluntary compliance, maybe you take that into consideration, not simple compensation, compensation, compensation. Well, that's for two reasons. The trial court's decision should be sustained. First, that's within the trial court's discretion to weigh the factors. And as this court noted, any violator can find refuge in at least one of the complex machine factors. So I listed four. Yes, you listed four that form a core group together. Second, the trial court did find that there was deterrent value in imposing the full interest penalty, as well as making the government whole through prejudgment interest. In weighing those factors. Can you wind up here, Mr. Ticini? As the plaintiff, I mean, excuse me, as National Semiconductor noted, the Court of International Trade simply applied complex machine. NSC does not like the outcome of this application, but the trial court complied with this court's directive in both applying the complex machine factors and providing a very reasoned basis for exercising its equitable authority to award prejudgment interest. Thank you. Thank you, Mr. Ticini. Mr. Whiteley, you have over five minutes remaining. Thank you, Your Honor. The government continues to focus on this issue of making the government whole by awarding interest. But as we stated earlier, at the time Congress enacted Section 50, amended Section 1592 and Republic Law 95-410 in 1978, underpayments of duty where there was no violation, but simply an honest underpayment of duty later determined by customs, perhaps years later, and assessed against the importer, no interest would accrue. So this was not an interest-free loan from the government to National because no interest would have been owing. The interest penalty was achieved so that people who did violate the law would have to pay interest because those that did not violate the law, but subsequently owed substantially increased duties, did not have to pay interest. In fact, that was the case until 1984. So this issue of making the government whole here is specious. It's just not appropriate. Well, but there's other factors in the complex machines. For instance, economic benefit gained by the defendant through a violation. Doesn't that suggest that you shouldn't gain from your violation? But at the time this law was enacted, they didn't gain anything by their violation because they would not have owed the interest on the money under any circumstances if there was not a violation. So had they simply, honestly, or not negligently underpaid the duties on these same entries at that time, and then government said, oh, by the way, you owe us $985,000 in increased duties that should have been paid five years ago, under the statute in 1978, the government was only entitled to get the $978,000. It was not entitled to any interest. The only time it would be entitled to interest would be if there was a penalty, if there was a violation, and then it was subsequently disclosed. So it's not making the government whole. It's giving the government a penalty on top of the duties which would not have otherwise had to have been paid by the importer had there not been a violation. So the penalty is, in fact, an increased amount of money to be paid by a violator who owes money as opposed to a non-violator who simply, customs later found, owed money. So it isn't a windfall to anybody. It's, in fact, a penalty against someone who negligently underpays duties, whereas someone who non-negligently underpaid duties, which happens all the time as a former import specialist, I can assure you, didn't have to pay anything in addition to the revenue. The other thing the government suggests is that this prior disclosure provision is mandatory. I can tell you strongly that the position of both the Customs Bar and the American Association of Exporters and Importers is that it's not a mandatory provision for one simple reason, which is if it's intentional violation, it's potentially criminal conduct. And the Fifth Amendment prohibits someone from having to disclose to the government potentially criminal conduct. What about the district court's pretty clear findings that the errors here were serious lapses in your responsibility to comply with the statute, that you have a substantial benefit from this, and that there's no dispute, but that you can pay the amount? There's no dispute. Three additional factors. There's no question we could pay the amount, but the mere fact that. Those are three additional complex machine factors. Yes, Your Honor. The serious lapses were the Customs Compliance Manager National during the time this happened had been in that position for about 20 years. He had several bouts with cancer. You lost him, but then the lapse goes on for seven years. I mean, that might explain a year or two. It was one violation with respect to a number of entries. There were no other violations with respect to other entries during that period of time. And this was a time National Assembly conductor during the period in question was filing 10,000 to 12,000 consumption entries a year on a billion dollars plus worth of imports. So and the trial court judge acknowledged that. I mean, this is an incredibly large, complex behemoth of compliance to try to manage, and they failed in this isolated instance. Thank you. Thank you, Mr. Whiteley. All rise. The Honorable Court is adjourned until tomorrow morning at 10 AM.